UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARGO J., § § Plaintiff, § § v. § § COMMISSIONER OF SOCIAL SECURITY, § § Defendant. § | Case # 6:20-cv-1614-DB MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Plaintiff Margo J. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 10. Plaintiff also filed a reply brief. *See* ECF No. 11. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 10) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed an application for SSI on April 3, 2017, alleging disability beginning August 1, 2015 (the disability onset date), due to major depressive order, hypertension, migraines, and neuropathy. Transcript ("Tr.") 20, 160-65, 173. Plaintiff's claim was denied initially on July 5, 2017, after which she requested an administrative hearing. Tr. 20. On May 17, 2019, Administrative Law Judge Susan Smith (the "ALJ") presided over a video hearing from

Alexandria, Virginia. Tr. 20. Plaintiff appeared and testified in Buffalo, New York, and was represented by Phillip V. Urban, an attorney. *Id*. Larry A. Underwood, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*. The ALJ issued an unfavorable decision on June 4, 2019, finding that Plaintiff was not disabled. Tr. 20-30. On July 16, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 6-9. The ALJ's June 4, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her June 4, 2019 decision:

1. The claimant has not engaged in substantial gainful activity since April 3, 2017, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: hypertension, obesity, migraines, asthma, and major depressive disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416. 967(b)[1] except after 30 minutes of sitting, needs to stand for a minute or two, without going off-task or leaving the workstation. The claimant is able to perform simple, routine and repetitive tasks and can only tolerate occasional changes in the work setting. The claimant can only make simple, work-related decisions. The claimant would be off-task five percent of the time, in an eight-hour workday.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on May 23, 1979 and was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 3, 2017, the date the application was filed (20 CFR 416.920(g)).

Tr. 20-29.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Accordingly, the ALJ determined that, based on the application for supplemental security benefits protectively filed on April 3, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 30.

## **ANALYSIS**

Plaintiff asserts a single point of error challenging the ALJ's mental RFC finding. *See* ECF No. 9-1 at 11-15. Plaintiff argues that, in reaching the mental RFC finding, the ALJ failed to properly evaluate assessments completed by treating psychiatrist Michael Godzala, M.D. ("Dr. Godzala"), and treating therapist Lisa Marek, LCSW ("Ms. Marek"), completed for the Erie County Department of Social Services ("DSS") (Tr. 638-92). *See id*. at 11-15. Plaintiff further contends that, in evaluating her RFC, the ALJ improperly found that her symptoms stabilized with treatment. *See id*. at 13.

The Commissioner argues in response that the ALJ's mental RFC finding was supported by substantial evidence, including opinion evidence, treatment notes, Plaintiff's conservative treatment history, and her activities of daily living. *See* ECF No. 10-1 at 7-17. Further, argues the Commissioner, the ALJ properly considered the opinions of Dr. Godzala and Ms. Marek. With respect to Ms. Marek, the Commissioner maintains that the ALJ reasonably gave her opinion little weight since she declined to complete most of the form, and Plaintiff failed to meet her burden to show that the few portions Ms. Marek completed demonstrated limitations beyond those that were included in the RFC finding. *See id*. at 12-13. Finally, the Commissioner argues that, contrary to Plaintiff's argument (*see* ECF No. 9-1 at 13), the evidence showed that Plaintiff's symptoms were alleviated with treatment and medications. *See* ECF No. 10-1 at 10-11.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such

5

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ adequately considered the evidence of record, including the medical opinion evidence, the treatment notes, the objective findings, and Plaintiff's wide range of daily activities, and the ALJ's RFC determination was supported by substantial evidence.

As noted above, Plaintiff argues that the ALJ's RFC was not supported by substantial evidence. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective

6

evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC. *See* 20 C.F.R. §§

7

404.1527, 416.927. Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). In this case, Plaintiff filed her claim on April 3, 2017, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, the regulations also alter the way the ALJ discusses medical opinions in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*.

8

Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Plaintiff asserts that the ALJ failed to address Dr. Godzala's opinions that Plaintiff had moderate mental limitations and failed to consider whether these moderate limitations were supported by, and consistent with, other evidence in the record. *See* ECF No. 9-1 at 11-15. The record reflects that Plaintiff treated with Dr. Godzala, Ms. Marek, and other providers at Best Self Behavioral Health ("Best Self") beginning in August 2015. *See* Tr. 226-36. The record contained several DSS assessments completed by Dr. Godzala and/or Ms. Marek from July 2016 to March 2019. Tr. 638-92. Additionally, Ms. Marek submitted a medical source statement dated April 29, 2019.[2] Tr. 630-36.

Contrary to Plaintiff's argument, the ALJ did not ignore Dr. Godzala's opinions. Although the ALJ does not specifically mention Dr. Godzala by name in her decision, as Plaintiff acknowledges (*see* ECF No. 9-1 at 11, 13), the ALJ specifically referred to the DSS assessments containing Dr. Godzala's opinions from: July 15, 2016 (Tr. 652); February 21, 2017 (Tr. 656, 664); August 25, 2017 (Tr. 668); October 17, 2018 (Tr. 684); and March 20, 2017 (Tr. 692). *See* Tr. 26-27. The ALJ also noted that the record contained various DSS assessments showing that Plaintiff could work, which are the same assessments cited above. Tr. 27 (citing Tr. 638-92). As Plaintiff also admits, Dr. Godzala assessed that Plaintiff had at most moderate mental limitations in all areas, such as in understanding instructions, carrying out instructions, maintaining concentration, interacting appropriately with others, maintaining socially appropriate behavior, and appearing to function in a work setting at a consistent pace. Tr. 652, 656, 668, 684, 692. He also indicated that Plaintiff's prognosis was good or fair-to-good. Tr. 646, 648, 651, 663).

---

[2] While Plaintiff attributes this medical source statement to both Ms. Marek and Dr. Godzala (*see* ECF No. 9-1 at 6, 11), Dr. Godzala neither signed nor completed the opinion. Tr. 631. In fact, Dr. Godzala's name was crossed out on the form, and a notation was inserted that the assessment was "completed by Lisa Marek." *Id*.

The ALJ considered these various assessments and reasonably found that, since they assessed up to moderate limitations, they showed that Plaintiff could work. Tr. 27. The ALJ's interpretation was reasonable as cases in this Circuit repeatedly acknowledge that up-to-moderate limitations do not preclude unskilled work. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (affirming a finding of unskilled work where the evidence showed moderate or less severe limitations in her work-related functioning); *see McIntyre v. Colvin*, 758 F.3d 146, 150-51 (2d Cir. 2014) (finding that moderate limitation in maintaining concentration, persistence, or pace or in relating with others did not preclude unskilled work); *Calabrese v. Astrue*, 358 F. App'x 274, 277 (2d Cir. 2009) (finding that moderate limitations in different work-related areas were reasonably found to not preclude unskilled work.

To the extent Plaintiff claims that the ALJ did not sufficiently discuss Dr. Godzala's opinions, the fact that the ALJ did not explicitly mention Dr. Godzala by name does not mean that she did not consider his opinions. *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." (internal quotation marks and citations omitted)); *see also Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) ("[W]here the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."); *Gladney v. Astrue*, No. 12-cv-6423P, 2014 WL 3557997, *10 (W.D.N.Y. 2014) (even where ALJ could have more fully articulated the basis for his conclusion, any such failure was harmless, where it was "possible to glean the ALJ's rationale" from a review of the entire decision). As noted above, the ALJ sufficiently discussed Plaintiff's mental health with Best Self, as well as the DSS opinions submitted by Dr. Godzala, and this evidence is sufficient to permit the Court to glean the rationale of the ALJ's decision.

With respect to Plaintiff's complaint that the ALJ did not sufficiently evaluate an assessment completed by Ms. Marek on April 29, 2019 (*see* ECF No. 9-1 at 6-7), the ALJ explained that she found the assessment unpersuasive because Ms. Marek repeatedly indicated throughout the form that she was unable to assess any limitations. Tr. 27, 633-34. Ms. Marek was also unable to assess whether Plaintiff could engage in full-time competitive employment. Tr. 636. Thus, while the ALJ reasonably gave this opinion little weight, Plaintiff has failed to meet her burden to show that the few portions Ms. Marek completed sets forth limitations beyond those that were included in the RFC finding. *See Smith v. Berryhill*, 740 Fed. Appx. 721, 726 (2d Cir. 2018) (explaining that plaintiff had a duty to prove a more restrictive RFC than the ALJ found); *Parker v. Berryhill*, No. 17-cv-252-FPG, 2018 WL 4111191, at *4 (W.D.N.Y. Aug. 29, 2018) (same).

Furthermore, the ALJ reached her RFC finding based not only on the opinions of Plaintiff's treating mental health providers, but also on the record as a whole, which included two other opinions about Plaintiff's functioning, Plaintiff's treatment notes, and her wide range of daily activities. For example, the ALJ considered the July 2017 prior administrative medical findings of state agency psychologist O. Fassler, Ph.D. ("Dr. Fassler"), who reviewed the evidence in the record and assessed that Plaintiff did not have a severe mental impairment. Tr. 27, 69-70. Dr. Fassler specified that plaintiff had mild restrictions in her ability to understand, remember, and apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. Tr. 69.

The ALJ also considered the June 2017 opinion of consultative examiner Susan Santarpia, Ph.D. ("Dr. Santarpia"), who assessed that Plaintiff had no mental limitations in her ability to understand, remember, and apply simple and complex instructions; use reason and judgment to make simple work-related decisions; interact adequately with supervisors, coworkers, and the public; sustain concentration and perform a task at a consistent pace; sustain a routine and regular

attendance at work; regulate emotion, control behavior, and maintain well-being; and take appropriate precautions. Tr. 27, 354-55. Dr. Santarpia based her opinion on her examination of Plaintiff, which showed that Plaintiff had a cooperative demeanor, fluent speech, coherent thought processes, full orientation, intact attention, intact memory, fair insight and judgment, and average estimated intelligence. Tr. 26, 353-54.

Although both Dr. Fassler and Dr. Santarpia's opinions supported a finding that Plaintiff had either no mental limitations, or at-most-mild mental limitations, the ALJ explained that Plaintiff's ongoing mental issues, particularly in social interaction, warranted greater limitations, though not to the extent Plaintiff alleged at the hearing. Tr. 27-28, 574. Thus, the ALJ restricted Plaintiff to work that was low-stress and entailed only occasional contact with others. Tr. 25. In addition, at step five, the ALJ only considered whether Plaintiff could do unskilled work,[3] which as noted above, is simple work. Tr. 29.

Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). Thus, opinion evidence is only one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical

---

[3] The mental activities generally required by competitive, remunerative, unskilled work are understanding, remembering, and carrying out simple instructions; making simple work-related decisions; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.968; *see* SSR 85-15, 1985 WL 56857 *4. In addition, unskilled work "ordinarily involve[s] dealing primarily with objects, rather than with data or people." SSR 85-15, 1985 WL 56857 *4.

sources, including the claimant, such as from forms contained in the administrative record). *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Furthermore, it is the responsibility of the ALJ to resolve conflicts in the evidence and to weigh the evidence available to make an RFC finding that is consistent with the record as a whole. *See Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (holding that the ALJ properly resolved conflicts in the medical evidence after considering the record in its entirety).

In reviewing Plaintiff's treatment notes, the ALJ reasonably found that, while they supported including RFC restrictions to simple, occasional-contact, low-stress work, they did not support a finding of disability. Tr. 26-27. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x. 5, 9 (2d Cir. 2017) (holding that the ALJ could rely on treatment notes to formulate the RFC assessment); *Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (explaining that an ALJ looks to "all of the relevant medical and other evidence" including relevant medical reports, medical history, and statements from the claimant when assessing an applicant's RFC). The examination findings of Plaintiff's providers revealed that she had a cooperative demeanor; goal-directed thought processes; appropriate thought content; normal speech; a mood that was sometimes depressed, but other times "better," "good," or euthymic (normal); full orientation; good attention and concentration; fair or intact memory; fair or appropriate insight and judgment; normal intelligence, appropriate grooming; and no perceptual disturbances. Tr. 269-70, 300, 380, 384, 390, 449, 452, 455, 463, 467, 578, 582, 586, 597, 602, 608, 609, 614, 622, 698.

In addition to showing modest and normal objective findings, Plaintiff's treatment records also revealed that her symptoms were improving on medication. Tr. 26, 28, 584-85, 588-89. It is proper for the ALJ to consider improvement with treatment. *See Reices-Colon v. Astrue*, 523 F.

App'x 796, 799 (2d Cir. 2013) (improvement with treatment is properly considered in concluding claimant not disabled); *see also* 20 C.F.R. § 416.926a(a)(3) (ALJ must consider the effects of medications or other treatment on a claimant's ability to function). While Plaintiff takes issue with the ALJ's finding that her symptoms stabilized (*see* ECF No. 9-1 at 13), the evidence in the record supports the ALJ's finding that Plaintiff's medications were alleviating her symptoms. Tr. 26, 28.

For example, during a May 15, 2017 visit, Plaintiff reported that her symptoms were only mild. Tr. 271. During visits on September 6, 2017, November 21, 2017, and February 13, 2018, she reported that her depression had been stable and manageable. Tr. 584-85. During visits on October 25, 2018, and January 2, 2019, she reported that her symptoms were only "moderate." Tr. 585. During an April 3, 2019 visit, she asserted, "I'm doing better doctor, thank you for the new medicine." Tr. 585. Similarly, Dr. Godzala, indicated that Plaintiff's prognosis was good or fair-to-good. Tr. 646, 648, 651, 663. Thus, while there may have been brief and intermittent periods Plaintiff's symptoms increased, overall, the evidence supports the ALJ's finding that Plaintiff experienced an improvement in her symptoms with medication. Furthermore, the record suggests that Plaintiff's increase in mental health symptoms was usually due to situational stressors. *See, e.g.*, Tr. 652. *See Morgan v. Colvin*, No. 6:14-cv-0549 (LEK), 2016 WL 3527907, at *15 (N.D.N.Y. June 23, 2016) (situational stressors are not a basis for a finding of disability).

Treatment records also supported the ALJ's observation that Plaintiff received conservative treatment throughout the relevant period. Tr. 28. *See Rivera v. Colvin*, No. 1:14-CV-00816 (MAT), 2015 WL 6142860, at *6 (W.D.N.Y. Oct. 19, 2015) (citing *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2014)) (ALJ may consider conservative treatment). There is no evidence that Plaintiff required emergency room treatment, hospitalizations, partial hospitalizations or any other types of acute care for her mental impairment. The fact that Plaintiff did not require such additional care supports the finding that her symptoms were well-managed with medications and

undermines her allegation of disability. *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (finding that conservative treatment weighed against a finding of disability). Thus, Plaintiff's treatment records, showing modest objective findings and an improvement in her symptoms with conservative treatment, provided support for the ALJ's finding that Plaintiff did not have functional limitations beyond those included in the RFC finding.

The ALJ's RFC finding was also supported by Plaintiff's activities of daily living. Tr. 24, 25. *See Vought v. Saul*, No. 18 Civ. 1435-MJR, 2020 WL 3410837, at *5 (W.D.N.Y. Jun 19, 2020) (holding that the ALJ could rely on the claimant's statements about his daily activities in support of the RFC finding). As the ALJ discussed, Plaintiff took care of her personal grooming needs; performed household chores, such as cooking, cleaning, and washing laundry; shopped; and used public transportation. Tr. 24, 25, 184-86, 348, 354. She socialized with friends (Tr. 348) and traveled out of state for a funeral (Tr. 622). In addition, Plaintiff attended school for part of the relevant period, graduated with an associate degree; made the dean's list her last semester; and completed an internship. Tr. 27, 183, 591. Plaintiff's wide range of daily activities provide support for the ALJ's finding that she could do unskilled/simple work that was low in stress and entailed no more than occasional contact with others. *Cheatham v. Comm'r of Soc. Sec.*, 1:17-CV-0782 (WBC) 2018 WL 5809937, at *10 (W.D.N.Y. Nov. 6, 2018) (ALJ's determination that plaintiff could maintain attention and concentration for simple, routine, repetitive tasks and interact to some degree with others is supported by plaintiff's activities, which included using public transportation, preparing meals, cleaning, shopping and playing basketball).

Based on the foregoing, the ALJ properly analyzed the medical opinions of record in accordance with the Commissioner's regulations and properly assessed Plaintiff's RFC. *See* 20 C.F.R. § 416.946(c) (the responsibility for determining a claimant's RFC rests solely with the ALJ); *see also Richardson*, 402 U.S. at 399 (it is within the sole province of the ALJ to weigh all

evidence and resolve material conflicts); *see Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (it is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon "adequate findings supported by evidence having rational probative force"). Accordingly, the Court finds no error.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the record, including the treatment reports, the medical opinions, and Plaintiff's mostly routine and conservative care, as well as Plaintiff's activities of daily living, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's

Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

    **IT IS SO ORDERED**.

*/s/ Don D. Bush*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE